RECEIPT # 10 _42819_
AMOUNT $ _150−_
SUMMONS ISSUED _Y-1_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _pr_
DATE _10-28-02_

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2002 OCT 28  A 11: 08

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CHRISTOPHER MAGGIO, ) | Docket No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SCHOOL YEAR ABROAD, ) | |
| WOODY HALSEY, individually and in ) | **02cv 12101 REK** |
| his official capacity. ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

This is an action by the Plaintiff, Christopher Maggio, against his former employer, the Defendant School Year Abroad ("SYA"), and the individual Defendant Woody Halsey, Executive Director of SYA. This action seeks to recover damages arising out of Defendants' wrongful termination of Mr. Maggio on the basis of his sexual orientation in violation of Massachusetts General Laws chapter 151B, and in violation of Mr. Maggio's common law and contractual rights.

### Parties

1. Plaintiff Christopher Maggio is an individual residing at 95 Oakridge Drive, Windsor Locks, Connecticut.

2. Defendant School Year Abroad is a corporation with a principal place of business in North Andover, Massachusetts, and a mailing address at Phillips Academy, 180 Main Street, Andover, Massachusetts.

DOCKETED



3. Defendant Woody Halsey is an individual who, on information and belief, resides in Haverhill, Massachusetts. At all times relevant hereto, Defendant Halsey served as Executive Director of SYA and as Mr. Maggio's immediate supervisor.

**Jurisdiction**

4. Jurisdiction lies in this court on the basis of diversity pursuant to 28 U.S.C. §1332.

**Facts**

5. In 1999, Defendants SYA and Halsey hired Mr. Maggio as Director of Admissions for SYA. See Exhibit A. SYA establishes and administers programs for American high school students to live and study abroad. At the time of Mr. Maggio's hiring, SYA operated schools in China, France and Spain.

6. Mr. Maggio received his undergraduate degree from Yale University in New Haven, Connecticut in 1984, and thereafter obtained his Masters Degree in Public Administration at Harvard's Kennedy School of Government in Cambridge, Massachusetts in 1997. Prior to his employment with SYA, Mr. Maggio served as Assistant Headmaster at the St. Mark's School in Southborough, Massachusetts, and prior to that, as Director of Admissions, Principal of the Secondary School, and International Baccalaureate Coordinator at the Marymount International School in Rome, Italy. See Exhibit B. Mr. Maggio speaks Italian fluently, and is very familiar with Italian culture, Italian laws and regulations regarding educational institutions, and is well-connected to and a member of professional organizations and government bodies relating to education in Italy.

7.  Defendants hired Mr. Maggio as Director of Admissions because of his success as Director of Admissions at Marymount International School in Rome, Italy. While Director of Admissions at Marymount, student enrollment increased from approximately 520 to over 800 students in two years.

8.  Defendants also hired Mr. Maggio because of his meritorious qualifications and prior experience administering a school for American and international students in Italy. Defendants wished to expand and establish an SYA school in Italy, and requested that in addition to his duties as Director of Admissions, Mr. Maggio agree to oversee the development and establishment of "SYA Italy."

9.  Defendant Woody Halsey, Executive Director of SYA and Mr. Maggio's direct supervisor, specifically promised Mr. Maggio that Mr. Maggio would serve as the first Resident Director of SYA Italy, "if we succeed in getting a new center started." See Exhibit A.

10. Mr. Maggio agreed to work for SYA as Director of Admissions, taking a significant cut in salary and benefits, because of Defendants' promises to give him the opportunity to establish a new school in Italy and serve as its first Resident Director. Mr. Maggio reasonably relied on Defendants' promises to his detriment.

11. Mr. Maggio fulfilled his responsibilities as Director of Admissions, while establishing the resident program for SYA in Italy. Mr. Maggio successfully recruited students for SYA programs, and updated the SYA catalogue, course listings, publicity materials and website.

12. Due to Mr. Maggio's hard work, SYA Italy opened its doors in September 2001.

13. Mr. Maggio never received a formal performance evaluation during his employment at SYA. However, during the summer of 2000, Mr. Maggio received an 11% raise. Defendant Halsey informed Mr. Maggio that this salary increase was the largest that any employee of SYA received that year.

14. Throughout the summer of 2000, Defendants promoted and held out Mr. Maggio as the Resident Director in Italy. SYA also provided Mr. Maggio with business cards stating that Mr. Maggio was the Resident Director of SYA Italy. See Exhibit C. In addition, SYA and Defendant Halsey sent out thousands of letters across the United States advertising SYA Italy with Mr. Maggio as "designated director" of SYA Italy. See Letters collected at D.

15. On August 13, 2000, approximately two weeks after Defendant Halsey formally announced the SYA Board of Trustee's approval of SYA Italy and Mr. Maggio's position as Director of SYA Italy, Mr. Maggio informed Defendant Halsey that Mr. Maggio is gay. Mr. Maggio asked Defendant Halsey whether SYA promulgated any policies regarding domestic partners or sexual orientation discrimination.

16. Defendant Halsey promised Mr. Maggio that he would raise Mr. Maggio's concerns at the SYA Board of Trustees' meeting on October 2, 2000, and get back to Mr. Maggio. Defendant Halsey did neither.

17. After Mr. Maggio informed Defendant Halsey of his sexual orientation, Defendant Halsey's attitude towards Mr. Maggio changed. Defendant Halsey was no longer friendly and warm in his interactions with Mr. Maggio. Instead, Defendant Halsey appeared angry and irritated with Mr. Maggio, no longer socialized with Mr. Maggio, and became hyper-critical of Mr. Maggio's performance.

18. In October 2000, Mr. Maggio arranged a visit to Viterbo, Italy, with Defendant Halsey. The purpose of this trip was to finalize arrangements for the school and, in large part, to introduce Defendant Halsey to the officials in Viterbo with whom Mr. Maggio had been working. After returning to the states, Defendant Halsey excluded Mr. Maggio from matters involving SYA Italy.

19. On Saturday, November 4, 2000, Defendant Halsey asked Mr. Maggio to meet with him at Defendant Halsey's home. Defendant Halsey knew that Mr. Maggio's five year-old daughter was visiting him that weekend, and that Mr. Maggio would be bringing her along to the meeting.

20. At this meeting, Defendant Halsey informed Mr. Maggio that he was being removed from his position as Resident Director in Italy. Defendant Halsey stated that Mr. Maggio could continue in his position as Director of Admissions for SYA for the remainder of the school year.

21. At no time during Mr. Maggio's employment at SYA did Defendant Halsey express concerns about Mr. Maggio's work on SYA Italy or his performance as the first Resident Director of SYA Italy.

22. Between May 2000 and the time he dismissed Mr. Maggio as Director of SYA Italy in November 2000, Defendant Halsey continued to praise Mr. Maggio for his work in finding the Viterbo site and working through the legal and practical logistics of establishing the SYA program in Italy. Defendant Halsey gave Mr. Maggio no indication that his position as Resident Director in Italy was in jeopardy.

23. Following his removal from the position of Resident Director for SYA Italy, Mr. Maggio attempted to continue to perform the duties of the Director of

Admissions for SYA, but found himself in the untenable position of recruiting students for SYA Italy at schools that still advertised and believed Mr. Maggio had been named the Resident Director for SYA Italy.

24.     Defendants' purported reasons for terminating Mr. Maggio are a pretext for impermissible discrimination on the basis of sexual orientation. On information and belief, no other SYA employee has been terminated for the purported reasons Defendant Halsey gave for terminating Mr. Maggio.

25.     On information and belief, if SYA had not terminated Mr. Maggio, Mr. Maggio would have been the first openly gay Resident Director for SYA.

26.     On information and belief, SYA hired a Resident Director for SYA Italy who is not gay, and who is not as qualified or experienced as Mr. Maggio.

27.     On information and belief, SYA hired a new Director of Admissions who is not as qualified or experienced as Mr. Maggio.

28.     On information and belief, two people are now doing the work Mr. Maggio did on his own.

29.     On April 23, 2001 Mr. Maggio timely filed his discrimination complaint against the Defendants at the Massachusetts Commission Against Discrimination. See Exhibit E.

30.     On September 10, 2002 the Massachusetts Commission Against Discrimination granted Mr. Maggio's request to withdraw his complaint in order to file this action in court. See Exhibit F.

## COUNT ONE
## MASSACHUSETTS GENERAL LAWS Chapter 151B, §§1, 4

31.    Paragraphs one through thirty are repeated and realleged.

32.    Plaintiff was hired by Defendants as Director of Admissions, and to establish and serve as Resident Director for SYA Italy.

33.    Plaintiff performed all duties pursuant to the agreed upon terms of his employment.

34.    Plaintiff received positive verbal job evaluations, a substantial raise and was treated collegially by Defendants until Plaintiff revealed that he is gay.

35.    After revealing his sexual orientation, Defendant Halsey treated Plaintiff with hostility, obstructed his access to information concerning the establishment of SYA Italy, and eventually terminated Plaintiff without notice and without cause.

36.    Defendants' criticism of Plaintiff's performance is as a pretext for impermissible discrimination.

37.    Defendants chose to fire Plaintiff on the basis of his sexual orientation, without notice and without cause, in an inexcusably and unnecessarily humiliating manner, damaging Plaintiff's reputation and causing emotional distress.

38.    Defendants chose to fire Plaintiff on the basis of his sexual orientation, without notice and without cause, during a time in the academic year when he would not be able to seek comparable employment.

39.    Defendants' termination of Plaintiff as Resident Director of SYA Italy, and constructive discharge of Plaintiff as Director of Admissions for SYA, constitutes impermissible discrimination against him on the basis of his sexual orientation.

40. As a result of Defendants' discriminatory actions, the Plaintiff suffered damages.

## COUNT TWO
## BREACH OF CONTRACT

41. Paragraphs one through forty are repeated and realleged herein.

42. In July 1999, Defendants entered into an implied contract for valuable consideration, wherein Plaintiff was recruited to both administer SYA's admissions program and establish and serve as Resident Director of SYA Italy.

43. For close to one and a half (1 1/2) years, Plaintiff successfully served as Director of Admissions, securing a healthy enrollment for the four SYA schools in France, Spain, China, and Italy.

44. For close to one and a half (1 1/2) years, Plaintiff performed all duties pursuant to his responsibilities in establishing and serving as the designated director of SYA Italy.

45. In Novemer 2000, Defendants terminated Plaintiff as Resident Director of SYA Italy without notice and without cause, in violation of Plaintiff's contractual rights.

46. Following notice of his termination, Defendants promised Plaintiff that he could continue on in his capacity as Director of Admissions for SYA through June 2001.

47. By terminating him as named Resident Director of SYA Italy, Defendants created an untenable work situation for Plaintiff as Director of Admissions. By failing to correct the untenable situation when and as requested by Plaintiff, Defendants constructively terminated him, without notice and without cause, in violation of Plaintiff's contractual rights.

48. As a result of Defendants' conduct, Plaintiff suffered damages.

## COUNT THREE
## BREACH OF DUTY OF GOOD FAITH OR FAIR DEALING

49. Paragraphs one through forty-eight are repeated and realleged herein.

50. In July 1999, Defendants entered into an agreement wherein Plaintiff would serve as Director of Admissions for SYA and assist in the establishment and implementation of SYA Italy.

51. As a condition of his employment, if Plaintiff was successful in creating and establishing SYA Italy, Defendants promised him that he would serve as SYA Italy's first Resident Director.

52. Reasonably relying on the promise that he would become SYA Italy's first Resident Director, Plaintiff agreed to work for Defendants for a substantial cut in pay and benefits.

53. For nearly one and a half (1 1/2) years, while performing all his duties as Director of Admissions, Plaintiff also successfully established and fostered the growth and development of SYA Italy.

54. In large part due to Plaintiff's hard work, SYA Italy admitted its first students in September 2001.

55. Defendants terminated Plaintiff without notice and without cause, in violation of Plaintiff's contractual rights and breaching their duty of good faith and fair dealing.

As a result of Defendants' conduct, Plaintiff suffered damages.

**WHEREFORE**, the Plaintiff respectfully prays that this Court,

(1) Enter judgment for him against the Defendants on all counts;

(2) Award back pay, front pay, emotional distress and compensatory damages, plus interest;

(3) Award punitive damages against the Defendants in an amount sufficient to deter such conduct in the future;

(4) Award reasonable attorneys fees and costs; and

(5) Award such other and further relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,
By His Attorney,

*[signature]*

Gretchen Van Ness
BBO# #553632
44 School Street, Suite 510
Boston, MA 02108
(617) 723-5060